UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION
_____

| | |
|---|---|
| **KERIC FRANKLIN,** ) | |
| ) | |
| **Petitioner,** ) | |
| v. ) | **Case No. 13-CV-2194** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## OPINION

Petitioner, Keric Franklin, filed this Motion to Vacate, Correct, or Set Aside Sentence Pursuant to 28 U.S.C. § 2255 (#1) on September 3, 2013. The government filed its Response (#3) on October 1, 2013. Petitioner filed a Reply (#4) on October 15, 2013. For the following reasons, Petitioner's Motion (#1) is DENIED.

### BACKGROUND[1]

Petitioner was indicted on two counts of, on or about May 28 and June 13, 2008, knowingly distributing 5 grams or more of a substance containing cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Counts 1 and 2); on or about June 18, 2008, knowingly distributing 50 grams or more of substance containing crack in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 3); on July 25, 2005, Petitioner did knowingly possess 50 or more grams of a substance containing crack with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 4); on or about July 25, 2005, did knowingly possess a firearm in furtherance

---

[1]The following background facts are taken from this court's Opinion (#36) of April 19, 2010, finding Petitioner guilty of counts 1, 2, and 3 of the indictment, and not guilty of counts 4, 5, and 6 of the indictment. Other pertinent facts are taken from the docket and filings with this court.

of a drug trafficking crime as charged in Count 4, in violation of 18 U.S.C. § 924(c) (Count 5); and on or about July 25, 2005, Petitioner, having been previously convicted of a felony, did knowingly possess a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 6). Petitioner waived his right to a jury trial and the case proceeded to a bench trial on August 17, 2009.

At trial, the government relied mainly, in regards to Counts 1-3, on the testimony of Special Agent Pat Albinger of the Vermilion County Metropolitan Enforcement Group (VMEG) and the testimony of a Confidential Source (CS). VMEG is Vermilion County's drug task force. Albinger does drug investigations and has worked somewhere between 200 and 300 drug investigations during his career.

Beginning in January 2008 he was approached by CS, a former drug addict who wanted to help remedy some of the harm he had seen caused by drug traffickers. The CS was not facing any criminal charges or seeking leniency for himself or others. CS provided Albinger with information concerning drug sales in Danville, Illinois, including information on Petitioner. CS told agents he could purchase crack from Petitioner. Before hiring CS, Albinger interviewed him. Although CS was a drug user, he was told not to use drugs during his work for VMEG. CS said he has been clean from cocaine since mid-2006. CS's girlfriend also had a pending traffic charge, but Albinger did not remember speaking with the State's Attorneys Office on her behalf, although he may have. Albinger knew CS was a convicted felon who had been to the Department of Corrections. CS claimed he never got anything out of helping VMEG, except $50 and the knowledge that he was helping to clean up Vermilion County and make up for his past mistakes. CS was familiar with Petitioner and had been involved in the Danville drug scene.

From January to March 2008 CS made three separate purchases of crack from Petitioner.

2

On one of these occasions Petitioner gave CS a piece of paper with the address of the DeWitt County jail containing the names of Freddell Bryant and Cameron Polansky and asked him to contact them. Bryant and Petitioner were both members of the Black P Stones street gang. For these January and March 2008 purchases CS was paid a total of $50 for his cooperation by VMEG. During May and June 2008 CS made three more controlled buys from Petitioner for VMEG.

Controlled Buy of May 28, 2008 (Count 1)

On May 28, 2008, VMEG Special Agents Albinger and Derek Hillery met with CS at a location in Danville. Albinger searched CS's person and vehicle and did not find any contraband or currency. The meeting was to set up a controlled purchase of crack from Petitioner. Petitioner's address was 1228 Garden Drive in Danville. CS was given $400 by the agents to buy drugs. CS was fitted with a hidden audio recording device. Hillery activated the recording device and drove CS to the parking adjacent to 1228 Garden Drive. Albinger followed Hillery and CS to the location, while VMEG Special Agent Pete Miller maintained surveillance on CS as he entered 1228 Garden Drive. Agents observed CS get out of his vehicle and enter 1228 Garden Drive. CS met with Petitioner inside the building. Agents, listening via transmitter, could hear CS enter an apartment and speak with Petitioner. During the recorded conversation Petitioner asked CS "what you got?" to which CS replied "...that four" and Petitioner said "four hundred?" CS and agents, based on their training and experience, testified that "four hundred" meant $400. Petitioner then said "I got you. Hard right" to which CS replied "I ain't doing soft for a minute." Hard refers to crack, soft to powder cocaine, according to CS and the agents. As Petitioner handed CS the crack, CS asked "what's this?" and Petitioner replied "half," referring to one half ounce of crack. During the conversation CS gave Petitioner $400 and Petitioner gave CS approximately one half ounce (14

grams) of crack.

Agents then observed CS leave 1228 Garden and get back into the vehicle with Agent Hillery. Hillery and CS returned to the prearranged location. At the location, CS gave Albinger a clear plastic baggie containing an off-white chunky substance later determined at the DEA North Central Laboratory to be 13.6 grams of a mixture and substance containing cocaine base and sodium bicarbonate (baking soda), which is commonly used to cook powder cocaine into crack cocaine. Albinger searched CS's person and vehicle for contraband and did not find any.

Controlled Buy of June 13, 2008 (Count 2)

On June 13, 2008, Albinger, Hillery, and DEA Agent Christian McGuire met with CS at the same prearranged location in Danville. Agents searched CS's person and vehicle and found no contraband. Albinger provided CS with $900 prerecorded official authorized funds. CS was equipped with a hidden audio recording and transmitting device. Hillery again drove CS to 1228 Garden and McGuire and Albinger followed CS and Hillery to the location while Miller maintained surveillance on the CS.

Again, CS met with Petitioner inside the building. CS could be heard over the transmitter speaking with Petitioner, with Petitioner asking "how much you got?" and CS replying "...that nine" referring to $900. CS asked Petitioner "want for just one of them" to which Petitioner replied "man, I only want, I only want eight for an ounce," which Albinger and CS said meant that Petitioner only wanted $800 for an ounce of crack. Petitioner also claimed it "was a drought" and "dry," which Albinger said referred to a shortage of cocaine. Petitioner also informed CS that it was "28 with the bag," meaning the crack weighed a full 28 grams with the packaging included.

CS gave Petitioner $800 and Petitioner gave CS a little less than 28 grams of crack. Agents

4

then observed CS leave 1228 Garden and get back into the vehicle with Agent Hillery. Hillery and CS returned to the prearranged location. At the location, CS gave Albinger a clear plastic baggie containing an off-white chunky substance later determined at the DEA North Central Laboratory to be 25.7 grams of a mixture and substance containing cocaine base and sodium bicarbonate (baking soda). Albinger searched CS's person and vehicle for contraband and did not find any. CS also gave the agents the $100 he had left over since Petitioner charged him only $800.

Controlled Buy of June 18, 2008 (Count 3)

On June 18, 2008, Albinger, Hillery, and DEA Agent Christian McGuire met with CS at the same prearranged location in Danville. Agents searched CS's person and vehicle and found no contraband. Albinger provided CS with $1,800 prerecorded official authorized funds. CS was equipped with hidden audio and video recording devices. Hillery again drove CS to 1228 Garden and McGuire and Albinger followed CS and Hillery to the location while Miller maintained surveillance on the CS.

Upon CS's arrival at 1228 Garden, agents watched the CS get out of the vehicle and enter an apartment inside the building. McGuire and Albinger could hear via the hidden transmitter CS talking with an unverified individual. After some preliminary discussion, Petitioner entered the apartment. The recorded video showed Petitioner entering the kitchen and standing next to a scale on a counter next to the sink. Petitioner prepared and weighed two ounces of crack for CS and then gave CS a bag with the crack (which CS held up to the camera) while Petitioner counted the money. Petitioner asked CS "how much you get 'em for?" and CS replied "eighteen" referring to $1,800. Petitioner told CS "naw, you keep the two hundred. Just give me the sixteen.," meaning he was only going to charge him $1,600 for the two ounces, not $1,800. When CS asked to see the scales,

5

Petitioner replied that "that mother fucker's fifty-three," referring to 53 grams of crack.

CS gave Petitioner $1,600 and Petitioner gave CS approximately 53 grams of crack. Agents then observed CS leave 1228 Garden and get back into the vehicle with Agent Hillery. Hillery and CS returned to the prearranged location. At the location, CS gave Albinger a clear plastic baggie containing an off-white chunky substance later determined at the DEA North Central Laboratory to be 51.9 grams of a mixture and substance containing cocaine base and sodium bicarbonate (baking soda), which is commonly used to cook powder cocaine into crack cocaine. Albinger searched CS's person and vehicle for contraband and did not find any. CS also gave the agents the $200 he had left over since Petitioner charged him only $1,600.

Following the controlled buys, on July 9, 2008, a search warrant was executed at Petitioner's apartment at 1228 Garden. Petitioner was found inside a bedroom in the apartment and was the only person in the apartment. In the kitchen, near the location where Petitioner was seen with the scale and bag of white powder in the June 18, 2008 video, was found a digital scale, often used in weighing out crack, Insolitol powder, commonly used to "cut" cocaine, and a plastic bag containing smaller baggies, commonly used to package crack. In the bedroom where Petitioner was found, agents located Petitioner's cell phone, which CS had previously used to arrange the controlled buys. Numerous other documents in Petitioner's name were found. Also in the bedroom agents found a baggie containing 15.2 grams of marijuana.

None of the agents actually witnessed an illegal drug transaction between CS and Petitioner. What they know they learned from the audio and video recordings and CS.

<u>July 25, 2005 Drug and Guns Seizure (Counts 4, 5, and 6)</u>

The government presented the testimony of Freddell Bryant, a fellow member of the Black

6

P Stones with Petitioner. According to Bryant, prior to 2005, Petitioner followed Bryant, who was a P Stones "general," to Danville. Bryant was involved in selling crack cocaine in Danville. Bryant agreed to help Petitioner financially by helping him sell drugs. Bryant supplied the cocaine to Petitioner as a "front." A "front" was like a loan and Bryant would collect on the "front" at a later date. In the Summer of 2005 Bryant bought a 9 millimeter (mm) pistol and a small silver gun. Petitioner held the guns for Bryant. Bryant was facing serious charges and did expect to get something out of his testimony. Bryant knew nothing about the drugs seized at the Walnut Street address, just the guns were his.

In July 2005, Randy Green, the owner of 706 Walnut Street in Danville, was approached by a young black male he knew as "Carl Thomas," who inquired about renting 706 Walnut. Green knew "Carl" because Carl was already renting from Green. Green gave Carl a key to the residence with the agreement that Carl would clean up the residence in lieu of a security deposit. Green testified that "Carl" appeared to be Petitioner, but he could not be certain. Carl never cleaned or took possession of the residence, so Green decided to show the residence to another prospective tenant on July 25, 2005. Once inside the residence, Green saw what he believed were guns and drugs in a backpack on the floor of the bedroom. He called police and waited outside for them to arrive. While waiting he observed a gray van pull up to the residence and a black male enter the residence and return to the van. He obtained the license plate number from the van and gave it to VMEG agents when they arrived several minutes later.

Green allowed VMEG agents to search the house. Inside a black backpack was located on the floor of the bedroom of the residence. Agents seized (1) a 9 mm Ruger pistol and magazine; (2) a Jennings, .380 caliber pistol and magazine; and (3) baggies containing a total of 51.5 grams of

7

crack. In the same bedroom agents also found numerous drug packaging materials, a currency counter, and a food saver vacuum sealer. The back of the house had also been fortified.

While conducting surveillance on the house following the search, agents observed a van arrive at the residence and saw Petitioner get out of the van and go inside. They then observed Petitioner come back out and get inside the van and drive away. As agents followed the van, Green received a phone call from who he thinks was "Carl" asking where his things were, but he also testified that he could not recognize the voice of the caller. Agents followed the van and eventually pulled it over, arresting Petitioner and two others found inside the van. Agents searched the van and found a set of keys for the 706 Walnut residence under the carpet in the back seat of the vehicle. The Illinois State Police crime lab found a latent print on the Ruger and identified the print as being made by Freddell Bryant. The crack was also determined to be a total of 51.5 grams.

This court found Petitioner guilty of counts 1, 2, and 3 of the indictment. The court found Agent Albinger and CS to be credible, and that the evidence against Petitioner on these counts was overwhelming. The court found Petitioner not guilty of counts 4, 5, 6 due to the questionable identification of Petitioner as "Carl Thomas" by landlord Randy Green. Further, Petitioner was never seen in possession of the weapons at issue. Without such identification by Green, the court found the remaining circumstantial evidence was not enough to convict Petitioner on counts 4, 5, and 6. On January 20, 2011, Petitioner was sentenced to life imprisonment. On August 30, 2012, in light of the U.S. Supreme Court's decision in *Dorsey v. United States*, 132 S.Ct. 2321 (2012), the Seventh Circuit Court of Appeals vacated Petitioner's sentence and remanded the matter to this court for resentencing. On January 9, 2013, this court sentenced Petitioner to 120 months in the Bureau of Prisons, all counts to run concurrently.

Petitioner filed this Motion to Vacate, Correct, or Set Aside Sentence Pursuant to 28 U.S.C. § 2255 (#1) on September 3, 2013. In his motion, Petitioner appears to raise the following arguments: (1) Petitioner himself never agreed to "a stipulation of facts" with the government and there is no evidence the court "made a full inquiry concerning a voluntarily choice to submit the case on stipulated facts, for warning me, Keric Franklin, that the court could decide the case on stipulated facts alone"; (2) he was not able to cross-examine the forensic laboratory analyst who conducted the testing "that identified a controlled substance" in his case; (3) there was insufficient evidence to convict Petitioner; (4) the search warrant violated his Fourth Amendment rights; and (5) the court improperly relied on certain prior convictions as a basis for increased punishment and the government ignored his objections to his Pre-Sentence Report. The government's Response (#3) argues that Petitioner's motion must fail because his claims are procedurally defaulted due to Petitioner's failure to raise them on direct appeal.

ANALYSIS

I. Stipulation and Sixth Amendment Violation On Cross-Examination of Foresnic Analyst

Petitioner first argues that the court erred by not conducting a "full inquiry concerning a voluntarily choice to submit the case on stipulated facts." The Stipulations of Fact (#23) submitted at trial on August 17, 2009, stipulated, among other things, that the substances contained in the bags obtained by law enforcement following the controlled buys was crack cocaine and the weight of said crack cocaine. The stipulation also stipulated that Petitioner had been convicted of a felony crime prior to 2005 punishable by more than one year of imprisonment. The stipulation was signed by Petitioner, his attorney, and the government attorney. The Seventh Circuit "does not require a

9

sentencing court to engage in a colloquy with a defendant before relying on a stipulation that the drug involved in the offense was crack." *United States v. Johnson*, 396 F.3d 902, 904 (7th Cir. 2005). In *Johnson*, the Seventh Circuit noted that defendants "regularly stipulate to facts at trial that will increase their sentences if they are found guilty[]" and went on to hold that:

> "We have never required district judges to engage in a colloquy with defendants concerning the voluntariness of stipulations or the sentencing implications of the stipulated facts before sanctioning a sentencing court's reliance on the undisputed facts." *Johnson*, 396 F.3d at 904.

Here, the stipulation clearly stated, in plain language, that Petitioner was stipulating that the substance in question was crack cocaine. He also stipulated as to the weight of the crack cocaine. The stipulation is clear and unambiguous on its face. Petitioner signed the stipulation and raised no objection at trial. Petitioner's argument on this issue is without merit.

Petitioner also argues that his Sixth Amendment right to confront witnesses against him was violated when he and his attorney were not allowed to cross-examine the forensic lab analysts who determined that the substance recovered by law enforcement during the controlled buys was crack cocaine. Presumably Petitioner is referring to the Stipulation of Facts (#23). However, because the court determined above that Petitioner entered into a valid stipulation of facts that stipulated the substance in issue was crack cocaine, this argument is without merit.

II. Sufficiency of the Evidence

Petitioner argues that the evidence presented at trial was not sufficient to convict him of counts 1, 2, and 3 of the indictment. The court agrees with the government that Petitioner's arguments on this point, as with his other points, is underdeveloped and not supported by affidavit

10

or other proof. The court found the evidence against Petitioner, at trial, to be overwhelming, and sees no reason cited by Petitioner to depart from its prior holding. For the reasons stated in the court's Opinion (#36) entering judgment of April 19, 2010, Petitioner's motion on this ground is denied.

   III.   Search Warrant

Petitioner argues that the search warrant violated his Fourth Amendment rights. Presumably, Petitioner is referring to the search warrant executed on his apartment after the 2008 controlled buys. In support of this argument, Petitioner simply states "[t]here is also a fourth amendment violation from the search which the evidence could not complete the totality of the circumstances or a showing of exigent circumstances, whereas a search warrant based on boiler plate, bare bone affidavit did not show probable cause for me, Keric Franklin."

"'Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Sutton*, — F.3d —, 2014 WL 503439 (7th Cir. Feb. 10, 2014), quoting *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006). When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause and courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision. *Sutton*, — F.3d —, 2014 WL 503439. A judge may not rely solely on "conclusory allegations" or a "bare bones" affidavit, however. *Sutton*, — F.3d —, 2014 WL 503439.

Petitioner has not stated what, specifically, in the search warrant made it "bare bones" or "boiler plate." He has not attached the search warrant or any other evidence in support of his

11

conclusory allegation. The Seventh Circuit has held that there are salutary reasons for requiring strict compliance with the affidavit requirement, because "the verification requirement serves to ensure that a petitioner can provide *some evidence* beyond conclusory and speculative allegations, even if that evidence is his verified statement alone." *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) (emphasis in original). Further, Rule 2 of the Rules Governing § 2255 Proceedings for the United States District Courts states that the motion must "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground." Rule 2(b)(1), (2) of the Rules Governing § 2255 Proceedings for the United States District Courts. Here, Petitioner not only failed to attach an affidavit or any sort of documentary evidence in support of his allegation, but the allegation itself, as contained in the motion, is vague, conclusory, and without any specificity whatsoever. Therefore, the court determines this ground is without merit and must be denied.

IV. Sentencing Claims

Petitioner claims that (1) the court failed to address his objections to the Pre-Sentence Report of his first sentencing and (2) that the court erred in increasing his sentence based on prior convictions. The government argues that Petitioner is procedurally defaulted from litigating these claims on collateral review because he failed to raise them in his direct appeal.

If a petitioner could have raised an argument on direct appeal, but did not, the petitioner is barred from raising it for the first time in a § 2255 motion. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). "A claim that has been procedurally defaulted ordinarily may only be raised in a § 2255 proceeding if the defendant demonstrates that he is 'actually innocent,' or that there is 'cause' and actual prejudice." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008), quoting *Bousley v. United States*, 523 U.S. 614,

622 (1998).

In the instant case, Petitioner's initial life sentence was vacated by the Seventh Circuit and remanded to this court for resentencing in light of *Dorsey*. Petitioner was resentenced by this court to 120 months in the Bureau of Prisons on January 9, 2013 and never filed an appeal. Therefore, Petitioner's claims related to sentencing have been procedurally defaulted. See *Sandoval*, 574 F.3d at 850.

Petitioner cannot excuse his procedural default. As detailed above in the court's finding that the evidence was sufficient to convict him, Petitioner has not demonstrated that he is "actually innocent" of the charges of which he was convicted. Nor has Petitioner demonstrated "cause." In his Reply (#4), Petitioner states that, on appeal from his first sentencing, he did mention his objections to the Pre-Sentence Report in his response to appellate defense counsel's *Anders*[2] brief.[3] However, the sentence in question to which those objections were directed was vacated by the Seventh Circuit. Petitioner could have raised those objections in an appeal of his sentence on remand. Petitioner chose not to file such an appeal. Similarly, Petitioner's argument that his "sentence violates the law" because the court improperly relied on prior convictions for "increased punishment" could have been raised on a direct of appeal following his January 9, 2013 resentencing. He claims in his Reply that, at the resentencing, this court stated that these issues could be saved "for the appeal court to resolve." As noted above, Petitioner never filed an appeal from the resentencing. Therefore, Petitioner cannot establish cause and prejudice and is in

---

[2]*Anders v. California*, 386 U.S. 738 (1967).

[3]The *Anders* brief stated that, besides the *Dorsey* claim, there were no other non-frivolous issues that defense counsel could raise on appeal.

procedural default. Petitioner's motion on these grounds is denied.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case (COA). A district court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2), the Supreme Court set forth the methodology to be used in evaluating a request for a COA. A petitioner need not demonstrate that he should prevail on the merits, but rather must demonstrate that the issues are debatable among jurists of reason, that the court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Barefoot*, 463 U.S. at 893, n. 4.

The court believes that Petitioner has not demonstrated that the issues raised are debatable among jurists of reason. The court would not resolve the issues in a different manner nor does it believe the questions are adequate to deserve encouragement to proceed further. Petitioner has not made a substantial showing of the denial of a constitutional right.

Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," which has happened here on ground four, a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added); see also *Jimenez v. Quarterman*, 555 U.S. 113, 119 n.3 (2009). This court concludes that jurists of reason

would not find it debatable whether Petitioner's petition states a valid claim of the denial of a constitutional right and also concludes that jurists of reason would not find it debatable whether this court correctly found that Petitioner procedurally defaulted his sentencing claims for failing to raise them on direct appeal. A COA is DENIED.

IT IS THEREFORE ORDERED:

(1) Petitioner's Motion to Vacate, Correct, or Set Aside Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) A Certificate of Appealability is DENIED.

(3) This case is terminated.

ENTERED this 13th day of February, 2014.

s/ MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE